JUAN ZALDUONDO VEVE ET AL., Petitioner and Appellee, *v.* MANUEL V. DOMENECH, TREASURER OF PUERTO RICO, Respondent and Appellant.

No. 6724.—Argued June 28, 1934.—Decided July 28, 1934.

Benjamin J. Horton Attorney General and R. Cordovés Arana, Assistant Attorney General, for appellant. E. Campos del Toro for appellees.

Mr. Justice Córdova Dávila delivered the opinion of the Court.

On March 16, 1930, Mrs. Josefa Veve y Díaz died in Fajardo. She left an estate consisting of several rural properties located in the towns of Ceiba, Fajardo and Luquillo. José Vahamonde, judicial administrator of the aforesaid estate, paid to the Insular Treasury the taxes due on the death of Mrs. Veve y Díaz, corresponding to the years 1928–29 and 1929–30 and further those due on the fiscal year 1930–31.

On November 18, 1933, the heirs together with the judicial administrator notified the Treasurer of Puerto Rico of the death of said lady, they offered the receipts crediting the payment of the territorial taxation up to the year 1931, and requested the adjustment of the inheritance tax, which they offered to pay, and also requested that the corresponding receipt be issued.

The defendant Treasurer refused to abide by the wishes of the petitioners on the ground that in the purview of the provisions of Section 5 of Law No. 99, (Sess. Laws of 1925, p. 790) entitled "A Law to Modify and Extend the Inheritance Tax and for Other Purposes," said petitioners are obliged to remit the last territorial tax receipt, crediting the payment of the taxes due up to the year 1933–34.

On these grounds and because the refusal of the Treasurer precludes the petitioners from paying the inheritance tax and from recording their estate in the Registry of Property, and because it is of urgent necessity to record said property in order to be able to mortgage it to obtain the necessary funds to pay the taxes due on said property for the years 1931–32, 1932–33 and 1933–34, the aforesaid petitioners requested the District Court of Humacao to issue a writ of mandamus ordering the Treasurer to extend the receipt corresponding to the inheritance tax the petitioners offered to pay.

After hearing the parties, the lower court sustained the petition in mandamus and ordered the treasurer to proceed to liquidate the amount due in concept of inheritance tax, and to receive said amount in payment of the tax, and to issue the corresponding receipt.

The Treasurer appealed from this judgment and assigned three errors to the trial court that may be embodied into one. It is alleged that the district court erred in holding the grounds adduced by the appellant to oppose the issuing of the writ of mandamus insufficient therefor, and in holding that Law No. 99 (Sess. Laws of August 29, 1925) only requires the payment by the heirs of the taxes due on the estate of the deceased on the date of the ancestor's death.

The only issue in the case at bar has been openly set forth by the pleadings and written arguments of the parties in interest. The plaintiffs uphold the theory that they are only obliged to pay the taxes, due at the time of the death of the ancestor. The defendant is of opinion that all the taxes due at the time notice is given should be paid.

The trial court is of opinion that in the purview of Section 5 of Law No. 99, (Sess. Laws of 1925) it is absolutely clear that the taxes payable are only those due at the time of the death of the ancestor, which should be totally paid before the Treasurer issues the receipt corresponding to the inheritance tax. The lower court underscores and emphasizes

the words of the law providing that a tax receipt be remitted to the Treasurer *in proof that the property tax imposed by this title has been fully paid on said estate.*

The defendant appellant argues that nowhere in the law is it provided that the taxes payable are those due on the death of the ancestor and sustains that together with a death certificate one should accompany the last tax receipt levied on said estate, that is, the receipt crediting the total payment of the tax levied by the ninth title of the Political Code, which comprises chapter one, which refers to taxation on property. Section 5 of Law No. 99, Sess. Laws of 1925, is a liberal transcription of Section 372 of the Political Code. For that reason the law provides that a tax receipt shall be remitted to prove that the tax levied by *this title* on the said property has been totally satisfied. The words "this title" refer to the ninth title of the Political Code, where in chapter one it deals with taxes on property, in the second with excise taxes and in the third with inheritance taxes. These words cannot refer to Law No. 99, Sess. Laws of 1925, which consists of sixteen sections and is not subdivided in titles or chapters.

Taxes on property, dealt with in Chapter I, Title II of the Political Code, are levied on real and personal property located in each of the municipalities of the Island in its owner's name on the fifteenth day of January of each year, and on the grounds of the fiscal years which begin on the first day of July of a calendar year and end on June 30 of the next calendar year. Taxes thus levied are payable in advance each semester on the first days of July and January of each year. The tax levied for present fiscal year and for three preceding fiscal years constitute a preferred lien over any other encumbrance existing over the property. This tax constitutes a real lien superior to any other existing one. It is not so as regards previous liens, and for this reason the defendant appellant argues that the Insular Treasury would not be sufficiently secured unless it required the pay-

ment of the taxes due on the date notice of the death was given.

We transcribe *infra* Section 5 of the aforesaid law which served as grounds to the lower court for its holding and the interpretation of which has been discussed amply by the parties from their respective points of view:

"It shall be the duty of every administrator, executor or trustee, or of any one of them acting in Porto Rico, and of every ancillary administrator, agent or person lawfully authorized to administrate the estate or any portion thereof in Porto Rico, sixty days after the death of the decedent whom he represents, to transmit to the Treasurer of Porto Rico a sworn notification of the death of said decedent, stating plainly: The name and residence of said decedent; the date of his death; whether he died intestate, and if not, the name of the notary with whom the will of such decedent is recorded; and, as nearly as possible, the amount, valuation, description and location of the estate of the decedent; the names and degrees of relationship of the heirs, devisees and legatees and the proportionate part and description of the estate accruing to each; the names of all administrators, executors or trustees of the estate of said decedent, and said notification shall be accompanied by a tax receipt in proof that the property tax imposed by this title has been fully paid on said estate. And any administrator, executor or trustee failing to file said notification with the Treasurer, within the period herein specified, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be personally liable to a fine of from one hundred (100) to one thousand (1,000) dollars."

The section transcribed *supra* provides for the remission to the Treasurer of a receipt crediting that the payment has been totally satisfied. The law protects the People of Puerto Rico with the evident purpose of offering it the necessary securities so that its right to collect the tax in its entirely can not be affected. Section 11 of Law No. 99, (Session Laws of 1925) imposes on the Treasurer the obligation to issue special receipts in triplicate when the inheritance tax is paid. Section 12 reads:

"No court shall approve the partition or distribution of the estate of any decedent or allow any final settlement of the accounts

of any executor, administrator, trustee or person administering any estate, unless the proper special tax receipt or receipts of the Treasurer, as provided in section 11 of this Act, shall be produced and exhibited; and no notary shall issue, authorize or certify any instrument of award, partition, distribution, alienation or mortgage of property unless such receipt or receipts of the Treasurer are presented; and no registrar shall record in any registry under his charge any instrument or judicial decision, ruling or judicial warrant authorized, rendered or issued in connection with the partition, distribution or delivery of such property, unless such receipt or receipts of the Treasurer are presented. . . .''

In the purview of the tenor of this section, the approval of the division or distribution of the estate and the liquidations of the executor's accounts is forbidden so long as the receipts required by Section 11 are not shown; but once these receipts are issued the parties may secure the approval of the aforesaid transactions. The heirs themselves so admit it when they state that they need the receipts in order to record the properties in their name so they may mortgage it. The spirit of the law cannot be to authorize transactions that may hinder or obstruct the People of Puerto Rico from subjecting all the property to the payment of taxes, without the need of limiting itself to collect those of the current fiscal year and the three fiscal years last preceding, as would be the case if a third person were involved.

In the case at bar the administrator of the estate as well as the heirs themselves have remained in total inactivity for over three and a half years, nearly four, without addressing the Treasurer of Puerto Rico to notify him of the death of Mrs. Veve y Díaz and to comply with the other provisions of the law. This notification should have been given 60 days after the death occurred. A violation of the law on the part of the interested parties can not relieve them of the obligation of paying all of the taxes. The purpose of the law is to insure the payment of said taxes before the estate is distributed amongst the heirs and the property is recorded in their name and before they may dispose of it

to the prejudice of the interests of the People of Puerto Rico. The fact that a term has been prescribed to give notice to the Treasurer and that this legislative provision has not been complied with, does not empower the heirs to destroy the spirit of the law, assuring them of a means to record the property in their name without having exhibited the tax receipt as expressly provided by the statute. The Treasurer is not obliged to acknowledge in writing that all of the inheritance tax has been paid until he is shown a receipt crediting the total payment of all the other taxes.

Section 332 of the Political Code emphasizes the spirit of our Legislative Assembly in what it concerns the recovery of taxes that encumber the property of a deceased person. This Section provides that ''no executor or administrator of the estate of a decedent shall divide or distribute such estate until all the taxes due thereon are paid, and no registrar shall record any instrument of award or partition of the property of any decedent upon which the current taxes have not been paid.''

Act No. 20, approved on April 27, 1933 (Session Laws of 1932–33, page 232), adds one Section to Act No. 99, (Session Laws of 1925), denominated Section 5a, which reads:

''Whenever any heir, mandatary, or legatee, has no money in cash wherewith to pay property taxes on inherited properties, or to pay the inheritance tax levied by this Act, the Treasurer of Puerto Rico is hereby authorized to permit the executor, administrator or trustee to sell such portion of the estate as may be absolutely necessary to raise funds sufficient to pay the aforesaid taxes, and in said cases the registrars of property are hereby authorized to record such documents as may be executed for that purpose.''

The preceding section is evident proof that our Legislature starts from the ground that so long as the inheritance tax and the taxes on the property remain unpaid, the hereditaments can not be disposed of. And it is clear that if the purpose of the law is to enjoin the alienation of these properties if the tax has not been previously paid, the heirs should

not be placed in a position where they can do what the law attempts to prevent.

The lower court in its opinion cites the legal precept contained in Section 5, by virtue of which if the administrator, executor or trustee fails to notify the Treasurer (of the death of the ancestor) he shall be guilty of a misdemeanor, as well as the provisions of Section 9 of the said law to the effect that if the inheritance tax levied is not paid within a year of the death of the ancestor, interest at the rate of 10% per annum shall be collected thereon. We can not see the relation that may exist between this penalty and the reach and scope of the provision of the statute requiring proof to the effect that the tax on the property has been totally paid. These penalties do not reduce nor extend the duty to pay which subsists in all its integrity.

Furthermore, the writ of mandamus should be issued by the Court in the exercise of its sound discretion. It is a remedy given to secure redress from grievances inferred in violation of law, not to stimulate the infringement of its provisions. In spite of the strict and severe nature of this proceeding it can not be said that it is entirely foreign to the principles of equity. This remedy should not be invoked by one who has violated the law under the precepts of which he seeks protection. It is not to be expected that a court of justice will issue a writ of mandamus to protect the rights of a party that has not complied with the duties imposed on him, to the prejudice of the rights of the People of Puerto Rico. *Maisonave* v. *Domenech, Treasurer*, 45 P.R.R. 238.

Now then, we have seen that the 1933 amendment authorizes the Treasurer to allow the executor, administrator or trustee to sell part of the hereditaments indispensably necessary to raise sufficient funds for the payment of the taxes on the property. For this sole and exclusive purpose can the sale be allowed. By this provision it is offered to the heirs and to the Insular Treasury a means to come to an agreement, to obviate difficulties and to facilitate payment of

the taxes, even though they have accrued before the law was enacted.

The petitioners allege that they have urgent need of mortgaging the property in order to raise the amount necessary for the purpose of paying to the Treasury of Puerto Rico the taxes due, as well as other debts incidental to the partition. This being so, there can be no difficulty in arriving to an understanding that will insure the rights of the People of Puerto Rico and that will provide the petitioners with the means of securing funds to accomplish their purpose. The facts pleaded show that there is no disagreement between the parties. The petitioners wish to pay and the respondent wants to recover the credits of the Insular Treasury. The only thing necessary is a conciliatory formula that harmonizes both interests and that will facilitate the realization of the objective of both parties, which is the payment of the amounts due to the Insular Treasury.

The judgment appealed from should be reversed and another one rendered dismissing the petition, without special condemnation of costs.

Mr. Justice Wolf dissented.